UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KEITH MASSIMINO,     :
           :
  Plaintiff,    :
           :
v.          :  Case No. 3:21-cv-01132 (RNC)
           :
MATTHEW BENOIT AND FRANK LAONE, :
           :
  Defendants.   :

RULING AND ORDER

Plaintiff Keith Massimino brings this suit under 42 U.S.C. § 1983 against Waterbury Police Sergeants Matthew Benoit and Frank Laone in their individual capacities for alleged violations of his First and Fourth Amendment rights.  In October 2018, the plaintiff was making a video recording of the Waterbury police station for the purpose of conducting a "First Amendment" audit.  He planned to upload the video to his YouTube page, which he maintained under the name "Northeast Auditor."  The defendants, unaware of the plaintiff's identity or purpose, saw him videotaping the Police Department building, approached him, and asked for his identification, which he repeatedly declined to provide.  They then arrested him for misdemeanor interference under CONN. GEN. STAT. § 53a-167a.  The parties have filed cross-motions for summary judgment.  For reasons stated below, plaintiff's motion is denied and defendants' motion is granted.

I.

Summary judgment is warranted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  When evaluating a summary judgment motion, a court reviews all the record evidence in the light most favorable to the non-moving party and determines whether the non-moving party has met its burden to present evidence that would permit a jury to return a verdict in its favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 & 255 (1986). Conclusory allegations, conjecture, and speculation are insufficient to create a genuine dispute of material fact. Shannon v. N.Y.C Transit Auth., 332 F. 3d 95, 99 (2d Cir. 2003).

II.

A. Count One: First Amendment

In count one, plaintiff alleges that the defendants violated his rights under the First Amendment by interfering with his videotaping of the police station.  Defendants seek summary judgment on this count based on qualified immunity.

Qualified immunity "balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231

(2009).  The defense "shields government officials from claims
for money damages unless a plaintiff adduces facts showing that
'(1) the official violated a statutory or constitutional right,
and (2) the right was "clearly established" at the time of the
challenged conduct.'"  Mara v. Rilling, 921 F. 3d 48, 68 (2d
Cir. 2019) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735
(2011)).  A finding for the defendant on either prong is
dispositive and a district court may consider them in any order.
Mara, 921 F. 3d at 68.

In determining whether a right was clearly established at
the relevant time, it is necessary to consider the
"particularized" right at issue.  See Anderson, 483 U.S. at 640;
al-Kidd, 563 U.S. at 742 ("We have repeatedly told courts . . .
not to define clearly established law at a high level of
generality.").  For a right to be "clearly established," "[t]he
contours of the right must be sufficiently clear that a
reasonable official would understand that what he is doing
violates that right."  Anderson v. Creighton, 483 U.S. 635, 640
(1987).  Ordinarily, for a federal right to be clearly
established in Connecticut, it must have been previously
recognized by the Second Circuit or the Supreme Court.  But a
right may be clearly established, even in the absence of
controlling appellate authority, by virtue of "a robust
'consensus of cases of persuasive authority.'"  Ashcroft v. al-

Kidd, 563 U.S. 731, 742 (2011) (quoting Wilson v. Layne, 526
U.S. 603, 617 (1999)).

Plaintiff contends that his right to make a video recording
of the police station in October 2018 was clearly established by
circuit court rulings outside the Second Circuit.  See Glik v.
Cunniffe, 655 F. 3d 78, 85 (1st Cir. 2011); Fields v. City of
Philadelphia, 862 F. 3d 353, 360 (3d Cir. 2017); Turner v.
Driver, 848 F. 3d 678, 688 (5th Cir. 2017); ACLU of Ill. v.
Alvarez, 679 F. 3d 583, 597-98 (7th Cir. 2012); Fordyce v. City
of Seattle, 55 F. 3d 436, 439 (9th Cir. 1995); Irizarry v.
Yehia, 38 F. 4th 1282, 1294 (10th Cir. 2022); see also Smith v.
City of Cumming, 212 F. 3d 1332, 1333 (11th Cir. 2000).  In
2015, a district court in this Circuit stated that "the right to
record police activity in public, at least in the case of a
journalist who is otherwise unconnected to the events recorded,
was 'clearly established'" by 2011.  Higginbotham v. City of New
York, 105 F. Supp. 3d 369, 380 (S.D.N.Y. 2015).

All but one of the cases on which plaintiff relies involved
the right to make a video recording of police officers
performing their duties in public spaces.  See, e.g., Glik, 655
F. 3d at 79 (recognizing "a constitutionally protected right to
videotape police carrying out their duties in public").  In
contrast, this case involves making a videotape of nonpublic
spaces.  See Summary of Undisputed Material Facts, ECF 44-1, at

¶ 70 (uncontested that the Waterbury Police Department
building's interior is nonpublic because "[a]ccess to the public
is not allowed without permission except in the lobby area").

The scope of plaintiff's videotaping of the police station
encompassed the entry to the offices of the Youth Division,
where officers conduct victim interviews and process juveniles,
who are entitled by statute to confidentiality.  Id. at ¶¶ 64-
65.  In addition, it encompassed other entry and exit points,
surveillance cameras, and an underground garage with gas tanks
and undercover vehicles.  Id. at ¶ 65.  The rulings on which
plaintiff relies do not address one's right to videotape
sensitive, nonpublic areas of a police station that similarly
implicate privacy rights of juveniles and witnesses as well as
legitimate concerns for station security and officer safety.

Plaintiff cites one case recognizing a right to videotape
a police station, Turner v. Lieutenant Driver, 848 F. 3d 678
(5th Cir. 2017).  Like the plaintiff here, Mr. Turner videotaped
a police station from a public sidewalk and subsequently refused
to provide officers with identification.  Id. at 683.  The Fifth
Circuit stated that "a First Amendment right to record the
police does exist, subject only to reasonable time, place, and
manner restrictions."  Id. at 688.  However, it affirmed the
district court's ruling that the defendants were entitled to
qualified immunity because this right was not clearly

established at the relevant time.

The Fifth Circuit's decision in Turner does not suffice to establish that plaintiff had a clearly established right to make a video recording of the Waterbury police station in 2018.  The decision in Turner framed the right broadly as the "right to record the police."  Id. at 687.  This framing does not provide the degree of particularity required by the Supreme Court to find that a right is "clearly established."  See al-Kidd, 563 U.S. at 742.  Indeed, the Court in Turner did not address a right to videotape a police station, let alone a right to videotape nonpublic areas or sensitive areas like the ones at issue here.

No case law placed the right claimed here beyond debate in October 2018.  Accordingly, defendants' motion for summary judgment on count one based on qualified immunity will be granted.

B. Count Two: Fourth Amendment Unreasonable Seizure

Count two alleges that the defendants violated plaintiff's rights under the Fourth Amendment by subjecting him to an investigative stop without reasonable suspicion and by arresting him without probable cause.  Defendants contend that there was no such violation.  I conclude that plaintiff has failed to raise a genuine issue of material fact with regard to either alleged violation.

"The Fourth Amendment protects against 'unreasonable . . .
seizures' of persons." <u>Mara</u>, 921 F. 3d at 69 (quoting U.S.
Const. amend. IV). A seizure occurs when, "in view of all of
the circumstances surrounding the incident, a reasonable person
would have believed that he was not free to leave." <u>United
States v. Mendenhall</u>, 446 U.S. 544, 554 (1980). An arrest
requiring probable cause is a prototypical seizure, but the
Fourth Amendment also covers "seizures that involve only a brief
detention short of traditional arrest." <u>United States v.
Brignoni-Ponce</u>, 422 U.S. 873, 878 (1975); see <u>Terry v. Ohio</u>, 392
U.S. 1 (1968).

    1. <u>The Investigative Detention</u>

    Plaintiff contends that officers seized him when they
approached him on the sidewalk and asked for identification.
Not all requests for identification are seizures. <u>Hiibel v.
Sixth Jud. Dist. Ct. of Nevada, Humboldt County</u>, 542 U.S. 177,
185 (2004). To determine whether an interaction constituted a
seizure, courts consider "all of the circumstances surrounding
the incident," including the number of officers involved, their
tone, and the presence or absence of a weapon. <u>Mendenhall</u>, 446
U.S. at 555.

    The record reflects that when the defendants approached the
plaintiff on the sidewalk, they said, "we need ID." At a later
point in their interaction with the plaintiff, they asserted

that their demand for identification was "a lawful order."  ECF
44-1 ¶¶ 95, 101.  Construed most favorably to the plaintiff, the
latter statement indicated that, as of that point in the
encounter, compliance with the demand for identification had
become compulsory.

To determine whether the officers' detention of the
plaintiff for the purpose of obtaining his identification was
supported by reasonable suspicion, it is necessary to "look at
the 'totality of the circumstances' . . . to see whether the[y]
. . . ha[d] a 'particularized and objective basis for suspecting
legal wrongdoing.'"  United States v. Arvizu, 534 U.S. 266, 273
(2002) (quoting Sokolow, 490 U.S. at 7).[1]  Viewing the record
most favorably to the plaintiff, I conclude that the officers'
detention of the plaintiff was supported by reasonable
suspicion.

The record shows the following.  At the time the officers
approached the plaintiff, he had been videotaping the Police
Department building for more than six minutes from all angles,
capturing sensitive areas of the building, as discussed above.
ECF 44-1 ¶¶ 20, 38, 76, 91.  The plaintiff's unusual behavior

---

[1] Though it is not settled law, the Second Circuit likely permits officers to
have reasonable suspicion of generalized criminal activity rather than
suspicion of a specific crime.  See United States v. Santillan, 902 F. 3d 49,
57 (2d Cir. 2018) ("We conclude [that the factors establishing reasonable
suspicion] were sufficient here to provide Officer Moreira, an experienced
police officer trained in narcotics trafficking interdiction, with
articulable and specific facts leading him to believe that the two men may
have been involved in some type of criminal activity.") (emphasis added).

caused the officers to suspect that he might have an illicit
purpose, especially in light of prior attacks on other police
stations.  Defendant Laone was in charge of the station's
security and had a duty to protect officers and civilians in the
building.  ECF 44-1 ¶ 71.  Accordingly, the officers approached
the plaintiff and asked him what he was doing.  Id. ¶ 48.
Plaintiff responded that he was a journalist.  But his behavior
differed significantly from that of journalists with whom the
officers had previously interacted.  In the past, each time a
journalist wanted to film the station, the police department was
given prior notice and the journalist provided the police with
press credentials.  Id. ¶¶ 52, 73-74.  Plaintiff declined to
provide the defendants with credentials, declined to answer
their follow-up questions about the type of story he was doing,
did not disclose that he was conducting a First Amendment audit,
and repeatedly refused to provide identification even after the
officers expressed safety and security concerns.  Id. ¶¶ 27, 49-
50, 53, 75-76.

Given the limited information plaintiff provided and the
ways his behavior differed from that of other journalists, a
conscientious officer could reasonably suspect that criminal
activity was afoot.  The investigative detention of the
plaintiff was therefore adequately supported by reasonable
suspicion.

Even assuming the detention of the plaintiff was not supported by reasonable suspicion, the defendants are entitled to summary judgment based on qualified immunity because their conduct did not violate a clearly established right.  No case on point decided by either the Supreme Court or the Second Circuit has been cited or found.  In the absence of such authority, a reasonable officer could think that briefly detaining the plaintiff for further investigation did not violate the Fourth Amendment.

In Turner, the Fifth Circuit concluded that qualified immunity applied in similar circumstances.  See Turner, 848 F. 3d 678 at 691 ("Even if we assume arguendo that [the officers] violated Turner's Fourth Amendments [sic] rights by detaining him without reasonable suspicion, we cannot say that this detention was objectively unreasonable in light of clearly established law.").  The Court explained that although Turner was merely filming routine activities taking place at the police station, an objectively reasonable officer could have suspected that he was casing the station for an attack, stalking an officer, or otherwise preparing for criminal activity, and thus could have found his filming sufficiently suspicious to warrant questioning and  brief detention.  The same is true here.  In fact, this is a stronger case for qualified immunity because the

plaintiff was filming sensitive areas of the police station rather than just routine activities.

Accordingly, the defendants' motion for summary judgment with regard to the investigative detention will be granted.

2. <u>The Arrest</u>

Plaintiff contends that the defendants violated the Fourth Amendment by arresting him without probable cause. "[P]robable cause to arrest exists when police officers have 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" <u>Walczyk v. Rio</u>, 496 F. 3d 139, 156 (2d Cir. 2007) (quoting <u>Weyant v. Okst</u>, 101 F. 3d 845, 852 (2d Cir. 1996)). The officers contend that they had probable cause to arrest plaintiff for misdemeanor interference as a matter of law.[2] Viewing the record most favorably to the plaintiff, I agree.

---

[2] Defendants also contend that plaintiff is collaterally estopped from arguing that probable cause was lacking because he made the same argument in support of a motion to dismiss the underlying criminal case and the argument was rejected. Under Connecticut law, a litigant is precluded from raising an issue in a subsequent action only if the issue was "fully and fairly litigated in the first action." <u>Aetna Cas. & Sur. Co. v. Jones</u>, 596 A. 2d 414, 421 (Conn. 1991)). "[U]nless the unsuccessful party in the prior litigation had the opportunity to seek appellate review, that issue has not been 'fully litigated' for the purposes of collateral estoppel." <u>Weiss v. Weiss</u>, 998 A. 2d 766, 782 n.20 (Conn. 2010). Plaintiff did not have an opportunity to seek appellate review of the trial court's ruling on probable cause, so collateral estoppel does not apply.

Defendants charged the plaintiff with violating CONN. GEN. STAT. § 53a-167a, which prohibits "interfering with an officer" by "obstruct[ing], resist[ing], hinder[ing], or endanger[ing]" an officer "in the performance of [the officer's] duties." Refusing to provide identification may violate § 53a-167a because it "is likely to impede or delay the progress of the police investigation, even when that refusal is peaceable." State v. Aloi, 911 A. 2d 1086, 1093 (Conn. 2007). See e.g., State v. Silva, 939 A. 2d 581, 588 (Conn. 2008) (defendant violated § 53a-167a when she refused to provide identifying documents to police); Armstrong v. Martocchio, 3:18 CV 580 (RMS), 2021 WL 1723243, at *10 (D. Conn. Apr. 30, 2021) (there was probable cause to arrest plaintiff for violating § 53a-167a because she "refus[ed] to move her truck . . ., refus[ed] to identify herself when requested, and walk[ed] away from the defendant").

It is undisputed that plaintiff repeatedly refused to provide the officers with identification even after they explained their safety and security concerns. Because such a refusal can be sufficient to violate § 53a-167a, a jury would have to find that the plaintiff was properly arrested for misdemeanor interference. The state court in the underlying criminal case reached the same conclusion when it denied a

motion to dismiss the criminal charge for lack of probable cause.

Even if the arrest lacked probable cause, the defendants are entitled to qualified immunity because they had at least "arguable probable cause" for the arrest. Zalaski v. City of Hartford, 723 F. 3d 382, 390 (2d Cir. 2013) (quoting Escalera v. Lunn, 361 F. 3d 737, 743 (2d Cir. 2004)). An arresting officer has arguable probable cause "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Washington v. Napolitano, 29 F. 4th 93, 105 (2d Cir. 2022) (quoting Zalaski, 723 F. 3d at 390). For the reasons set forth above, it was objectively reasonable for the officers to believe that probable cause existed to arrest the plaintiff for violating § 53a-167a. The state court's finding of probable cause in the underlying criminal case after considering a counseled motion to dismiss underscores the appropriateness of qualified immunity.

Therefore, summary judgment will be granted to the defendants with regard to the claim based on the arrest.

C. Count Three: Fourth Amendment Malicious Prosecution

Plaintiff also brings a claim for malicious prosecution against defendant Benoit. "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a

plaintiff must show a violation of his rights under the Fourth Amendment and establish the elements of a malicious prosecution claim under state law." Fulton v. Robinson, 289 F. 3d 188, 195 (2d Cir. 2002) (internal citations omitted).  The record does not permit a reasonable finding that Benoit violated the plaintiff's rights under the Fourth Amendment.  Therefore, summary judgment will be granted to defendant Benoit with regard to the malicious prosecution claim.

III.

Accordingly, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is granted. The Clerk may enter judgment and close the file.

So ordered this 31st day of March 2025.

/RNC/
Robert N. Chatigny
United States District Judge