# 25-1104

---

*In the United States Court of Appeals
For the Second Circuit*

---

Keith Massimino,

*Plaintiff-Appellant,*

v.

Matthew Benoit and Frank Laone,

*Defendant-Appellees*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

---

BRIEF OF DEFENDANTS-APPELLEES

---

Joseph A. Mengacci, Esq.
Daniel J. Foster, Esq.
Office of the Corporation Counsel
235 Grand Street, 3rd Floor
Waterbury, CT  06702
Tel. (203) 574-6731; Fax No. (203) 574-8340

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. iv

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................ 1

STATEMENT OF THE CASE ............................................................................ 3

SUMMARY OF THE ARGUMENT .................................................................... 5

STANDARD OF REVIEW ................................................................................. 6

ARGUMENT ................................................................................................... 6

I.    The District Court Properly Held That the Defendants Were Entitled to
Qualified Immunity Insofar as they Allegedly Violated the Plaintiff's First
Amendment Rights by Preventing Him from Filming Areas, Including Non-
Public Areas, of a Police Station ....................................................... 6

    A.    Governing Law on Qualified Immunity .................................... 6

    B.    The Defendants Are Entitled to Qualified Immunity because the Plaintiff
Did Not Have a Clearly Established Right to Film Areas, Including Non-
Public Areas, of a Police Station ........................................... 6

II.    The District Court Properly Held that the Defendants were Entitled to
Judgment as a Matter of Law on the Plaintiff's Fourth Amendment Claims ... 9

    A.    The District Court Properly Held that the Defendants' Investigative
Detention of the Plaintiff Was Lawful ...................................... 9

i

1. Governing Law on Grounds for Investigative Detention ................. 9

2. The District Court Properly Held That the Defendants' Investigative Detention of the Plaintiff Was Supported by Reasonable Suspicion ....................................................................................... 14

B. In the Alternative, the District Court Properly Held that the Defendants Were Entitled to Qualified Immunity Insofar as They Allegedly Violated the Plaintiff's Fourth Amendment Rights by Subjecting Him to an Investigative Detention ........................................................................ 15

C. The District Court Properly Held That the Defendants' Arrest of the Plaintiff Was Lawful ................................................................................ 16

1. Governing Law on Grounds for Warrantless Arrests ...................... 16

2. The District Court Properly Held That the Defendants' Arrest of the Plaintiff Was Supported by Probable Cause .................................... 17

D. In the Alternative, the District Court Properly Held that the Defendants Were Entitled to Qualified Immunity Insofar as They Allegedly Violated the Plaintiff's Fourth Amendment Rights by Arresting Him .................. 21

III. The District Court Properly Held That Defendant Benoit Was Entitled to Judgment as a Matter of Law on the Plaintiff's Malicious Prosecution Claim ............................................................................................................. 22

    A.    Governing Law on Malicious Prosecution ............................................... 22

    B.    Defendant Benoit Was Entitled to Judgment as a Matter of Law on This

           Claim Because He Did Not Violate the Plaintiff's Fourth Amendment

           Rights ....................................................................................................... 23

    C.    In the Alternative, Defendant Benoit Was Entitled to Judgment as a

           Matter of Law on This Claim Because He Was Entitled to Qualified

           Immunity ..................................................................................................... 3

CONCLUSION .......................................................................................................... 24

CERTIFICATE OF COMPLIANCE UNDER RULE 32(A)(7) ............................. 26

## TABLE OF AUTHORITIES

### CASES

Anderson v. Creighton, 483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) ... 7

Armstrong v. Martocchio, 3:18 CV 580 (RMS), 2021 U.S. Dist. LEXIS 82764,

    2021 WL 1723243 (D. Conn. Apr. 30, 2021) ..................................................... 17

Ashcroft v. al-Kidd, 563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).... 8,

    16

Brosseau v. Haugen, 543 U.S. 194, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) ....... 7

Carroll v. Carman, 574 U.S. 13, 135 S. Ct. 348, 190 L. Ed. 2d 311 (2014)............. 7

City and County of San Francisco v. Sheehan, 575 U.S. 600, 135 S. Ct. 1765, 191

    L.Ed. 2d 856 (2015) ............................................................................................ 8

District of Columbia v. Wesby, 583 U.S. 48, 138 S. Ct. 577, 199 L. Ed. 2d 453

    (2018) .............................................................................................................. 8, 17

Escalera v. Lunn, 361 F. 3d 737 (2d Cir. 2004)....................................................... 21

Falls Church Group, Ltd. v. Tyler, Cooper & Alcorn, LLP, 281 Conn. App. 84,

    912 A.2d 1019 (Conn. 2007) ............................................................................. 23

Friend v. Gasparino, 61 F.4th 77 (2d Cir. 2023)................................................ 19, 20

Fulton v. Robinson, 289 F.3d 188 (2d Cir. 2002)..................................................... 22

Gallo v. Barile, 284 Conn. 459, 935 A.2d 103 (Conn. 2007) .................................. 23

iv

Giannamore v. Shevchuk, 108 Conn. App. 303, 947 A.2d 1012 (Conn. 2008) ..... 22

Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011) ............................................................. 9

Heien v. North Carolina, 574 U.S. 54, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014) 18,

    20

Kelly v. Borough of Carlisle, 622 F.3d 248 (3d Cir. 2010) .................................... 11

Kisela v. Hughes, 584 U.S. 100, 138 S. Ct. 1148, 200 L. Ed. 2d 449 (2018) .......... 8

McHale v. W.B.S. Corp., 187 Conn. 444, 446 A.2d 815 (Conn. 1982) ........... 22, 23

Mullenix v. Luna, 577 U.S. 7, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) ............... 7

Rivas-Villegas v. Cortesluna, 595 U.S. 1, 142 S. Ct. 4, 211 L. Ed. 2d 164 (2021).. 7

State v. Aloi, 280 Conn. 824, 911 A.2d 1086 (Conn. 2007) ............................. 17, 19

State v. Silva, 285 Conn. 447, 939 A.2d 581 (Conn. 2008) .................................... 17

State v. Simmons, 86 Conn. App. 381, 861 A.2d 537 (Conn. 2004) ...................... 19

Suluki v. Credit One Bank, NA, 138 F.4th 709 (2d Cir. 2025) ................................ 6

Szymecki v. Houck, 353 Fed. Appx. 852 (4th Cir. 2009) ....................................... 11

Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) ..... 13-15, 19, 20

Turner v. Lieutenant Driver, 848 F. 3d 678 (5th Cir. 2017) .......................... 9-11, 16

United States v. Moore, No. 03-CR-32E, 2006 U.S. Dist. LEXIS 9184 (W.D.N.Y.

    Feb. 24, 2006) ...................................................................................................... 14

United States v. Rideau, 969 F.2d 1572 (5th Cir. 1992) ......................................... 13

United States v. Sokolow, 490 U.S. 1, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989) ... 14

United States v. Tehrani, 49 F.3d 54 (2d Cir. 1995) ................................................. 13

Walczyk v. Rio, 496 F.3d 139 (2d Cir. 2007) ......................................................... 17

Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996) ......................................................... 17

White v. Pauly, 580 U.S. 73, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017) ................. 7

Wilson v. Layne, 526 U.S. 603, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999) .......... 8

Zalaski v. City of Hartford, 723 F. 3d 382 (2d Cir. 2013) ......................... 21, 23, 24

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. 1 ....................................................... 3-6, 9, 11, 12, 20

U.S. Const. Amend. 4 .............................................................. 4-6, 12-23

## STATUTES

Conn. Gen. Stat. § 53a-167a ............................................ 3-6, 17-19, 21, 24

## OTHER AUTHORITIES

52 Am. Jur. 2d 143, Malicious Prosecution § 5 (2000) .......................................... 23

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.    Whether the District Court properly held that the Defendants were entitled to qualified immunity insofar as they allegedly violated the Plaintiff's First Amendment rights by preventing him from filming public and non-public areas of a police station (Part I)

II.    Whether the District Court properly held that the Defendants' investigative detention of the Plaintiff was supported by reasonable suspicion (Part II.A)

III.    In the alternative, whether the District Court properly held that the Defendants were entitled to qualified immunity insofar as they allegedly violated the Plaintiff's Fourth Amendment rights by subjecting him to an investigative detention (Part II.B)

IV.    Whether the District Court properly held that the Defendants' arrest of the Plaintiff was supported by probable cause (Part II.C)

V.    In the alternative, whether the District Court properly held that the Defendants were entitled to qualified immunity insofar as they allegedly violated the Plaintiff's Fourth Amendment rights by arresting him (Part II.D)

VI.    Whether the District Court properly held that Defendant Benoit was entitled to judgment as a matter of law on the Plaintiff's malicious prosecution claim (Part III.B)

VII.   In the alternative, whether Defendant Benoit was entitled to judgment as a matter of law on the Plaintiff's malicious prosecution claim because he was entitled to qualifies immunity (Part III.C)

## STATEMENT OF THE CASE

The District Court's Ruling and Order sets forth the following facts, which

are undisputed:

> In October 2018, the plaintiff was making a video recording of the
> Waterbury police station for the purpose of conducting a "First
> Amendment" audit. . . . The defendants [Police Officers Matthew Benoit
> and Frank Laone], unaware of the plaintiff's identity or purpose, saw him
> videotaping the Police Department building, approached him, and asked
> for his identification, which he repeatedly declined to provide. They then
> arrested him for misdemeanor interference under Conn. Gen. Stat. § 53a-
> 167a.

Ruling and Order (Mar. 31, 2025) (Doc. 58) at 1.

> The scope of plaintiff's videotaping of the police station encompassed the
> entry to the offices of the Youth Division, where officers conduct victim
> interviews and process juveniles, who are entitled by statute to
> confidentiality. [Summary of Undisputed Material Facts, ECF 44-1] at
> ¶¶ 64-65. In addition, it encompassed other entry and exit points,
> surveillance cameras, and an underground garage with gas tanks and
> undercover vehicles. Id. at ¶ 65.

Id. at 5.

> At the time the officers approached the plaintiff, he had been videotaping
> the Police Department building for more than six minutes from all angles,
> capturing sensitive areas of the building, as discussed above. ECF 44-1
> ¶¶ 20, 38, 76, 91. The plaintiff's unusual behavior caused the officers to
> suspect that he might have an illicit purpose, especially in light of prior
> attacks on other police stations. Defendant Laone was in charge of the
> station's security and had a duty to protect officers and civilians in the
> building. ECF 44-1 ¶ 71. Accordingly, the officers approached the
> plaintiff and asked him what he was doing. Id. ¶ 48. Plaintiff responded
> that he was a journalist. But his behavior differed significantly from that
> of journalists with whom the officers had previously interacted. In the
> past, each time a journalist wanted to film the station, the police

- 3 -

department was given prior notice and the journalist provided the police with press credentials. Id. ¶¶ 52, 73-74. Plaintiff declined to provide the defendants with credentials, declined to answer their follow-up questions about the type of story he was doing, did not disclose that he was conducting a First Amendment audit, and repeatedly refused to provide identification even after the officers expressed safety and security concerns. Id. ¶¶ 27, 49-50, 53, 75-76.

Id. at 8-9.

"Defendants charged the plaintiff with violating CONN. GEN. STAT. § 53a-167a, which prohibits 'interfering with an officer' by 'obstruct[ing], resist[ing], hinder[ing], or endanger[ing]' an officer 'in the performance of [the officer's] duties.'" Id. at 12. The state court in the underlying criminal case denied a motion to dismiss the criminal charge for lack of probable cause. Id. at 12-13. That charge was ultimately dismissed. Pl.'s Br. at 11.

The Plaintiff brought a three-Count Complaint, asserting (1) violation of his First Amendment rights, against both Defendants; (2) unreasonable seizure in violation of the Fourth Amendment, against both Defendants; and (3) malicious prosecution in violation of the Fourth Amendment, against Defendant Benoit. Complaint (August 24, 2021) (Doc. 1).

The parties filed cross-motions for summary judgment. See Ruling and Order at 1. The District Court granted the Defendants' motion and denied the Plaintiff's motion, both in their entirety. Id. at 14.

- 4 -

This appeal followed.

## SUMMARY OF THE ARGUMENT

The District Court properly held that, at the time of the incident at issue, there was in this Circuit no clearly established right to record areas, including sensitive, nonpublic areas, of a police station. There was no case in this Circuit or the Supreme Court establishing such a right, nor was there a robust consensus of cases of persuasive authority establishing such a right. The Defendant police officers were therefore entitled to qualified immunity as to the Plaintiff's first Amendment claim.

The District Court further properly held that the Defendants were entitled to judgment as a matter of law as to the Plaintiff's Fourth Amendment claim because (1) the Defendants' questioning of the Plaintiff and demand for identification were supported by reasonable suspicion; and (2) the Defendants' arrest of the Plaintiff was supported by probable cause to believe that he had violated Conn. Gen. Stat. § 53a-167a. The District Court further properly held, in the alternative, that the Defendants were entitled to qualified immunity with respect to their investigative detention and arrest of the Plaintiff.

Because the existence of probable cause is an absolute defense to a claim of malicious prosecution, and the Plaintiff's malicious prosecution claim further

required that he demonstrate a Fourth Amendment violation, the District Court properly held that the Plaintiff had failed to establish the elements of that claim. In the alternative, Defendant Benoit was entitled to qualified immunity on this claim because, as the District court held with respect to the Plaintiff's fourth Amendment claim, the Defendants had at least arguable probable cause to believe that the Plaintiff had violated Conn. Gen. Stat. § 53a-167a.

The District Court therefore properly granted summary judgment in favor of the Defendants as to all claims in this case, and the District Court's judgment should be affirmed.

## STANDARD OF REVIEW

This Court "review[s] a district court's grant of summary judgment *de novo* where the parties filed cross-motions for summary judgment and the district court granted one motion but denied the other." Suluki v. Credit One Bank, NA, 138 F.4th 709, 719 (2d Cir. 2025).

## ARGUMENT

**I.      The District Court Properly Held That the Defendants Were Entitled to Qualified Immunity Insofar as they Allegedly Violated the Plaintiff's First Amendment Rights by Preventing Him from Filming Areas, Including Non-Public Areas, of a Police Station**

**A.      Governing Law on Qualified Immunity**

The Supreme Court has set forth governing law on qualified immunity as

follows:

> "Qualified immunity attaches when an official's conduct does not violate
> clearly established statutory or constitutional rights of which a reasonable
> person would have known." White v. Pauly, 580 U.S. ___, ___, 137 S.
> Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (per curiam) (internal quotation
> marks omitted). A right is clearly established when it is "sufficiently
> clear that every reasonable official would have understood that what he is
> doing violates that right." Mullenix v. Luna, 577 U. S. 7, 11, 136 S. Ct.
> 305, 193 L. Ed. 2d 255 (2015) (per curiam) (internal quotation marks
> omitted). Although "this Court's case law does not require a case
> directly on point for a right to be clearly established, existing precedent
> must have placed the statutory or constitutional question beyond
> debate." White, 580 U. S., at ___, 137 S. Ct. 548, 551, 196 L. Ed. 2d
> 463 (alterations and internal quotation marks omitted). This inquiry
> "must be undertaken in light of the specific context of the case, not as a
> broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198, 125
> S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam) (internal quotation
> marks omitted).

Rivas-Villegas v. Cortesluna, 595 U.S. 1, 5, 142 S. Ct. 4, 211 L. Ed. 2d 164, 168

(Oct. 18, 2021).

"A right is clearly established only if its contours are sufficiently clear that

'a reasonable official would understand that what he is doing violates that right.'"

Carroll v. Carman, 574 U.S. 13, 135 S. Ct. 348, 350, 190 L. Ed. 2d 311 (2014)

(quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d

523 (1987)). The Supreme Court has repeatedly admonished the Appellate Courts

for defining the clearly established law at too high a level of generality. See,

- 7 -

Kisela v. Hughes, 584 U.S. 100, 103, 138 S. Ct. 1148, 200 L. Ed. 2d 449 (2018);

City and County of San Francisco v. Sheehan, 575 U.S. 600, 613, 135 S. Ct. 1765,

191 L.Ed. 2d 856 (2015); Ashcroft v. al-Kidd, 563 U.S. 731, 742, 131 S. Ct. 2074,

179 L.Ed. 2d 1149 (2011). Qualified immunity "protects 'all but the plainly

incompetent or those who knowingly violate the law.'" Id. at 743.

 In other words, "existing precedent must have placed the constitutional

question beyond debate." al-Kidd, 563 U.S. at 741. As the Supreme Court

emphasized in District of Columbia v. Wesby, 583 U.S. 48, 138 S. Ct. 577, 199

L.Ed. 2d 453 (2018), "[w]e have not yet decided what precedents – other than our

own – qualify as controlling authority for purposes of qualified immunity."

Wesby, 583 U.S. at 66 n.8. Absent controlling authority, "a robust 'consensus of

cases of persuasive authority'" is "necessary." al-Kidd, 563 U.S. at 742 (quoting

Wilson v. Layne, 526 U.S. 603, 617, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999)).

 **B. The Defendants Are Entitled to Qualified Immunity because the Plaintiff Did Not Have a Clearly Established Right to Film Areas, Including Non-Public Areas, of a Police Station**

The Plaintiff asserts that, "[b]y October 2018, Mr. Massimino's right to

record was clearly foreshadowed by six other circuits' rulings establishing the right

for qualified immunity purposes." Pl.'s Br. at 31 § 1.2.3. While the authorities

cited by the Plaintiff do concern the "right to record" police officers, only one

- 8 -

addresses the recording of a police station, and none concerned the recording of

sensitive, nonpublic areas of a police station. As the District Court held:

> All but one of the cases on which plaintiff relies involved the right to make a video recording of police officers performing their duties in public spaces. See, e.g., Glik [v. Cunniffe, 655 F. 3d 78, 79 (1st Cir. 2011)] (recognizing "a constitutionally protected right to videotape police carrying out their duties in public"). In contrast, this case involves making a videotape of nonpublic spaces. See Summary of Undisputed Material Facts, ECF 44-1, at ¶ 70 (uncontested that the Waterbury Police Department building's interior is nonpublic because "[a]ccess to the public is not allowed without permission except in the lobby area"). . . .

> The rulings on which plaintiff relies do not address one's right to videotape sensitive, nonpublic areas of a police station that similarly implicate privacy rights of juveniles and witnesses as well as legitimate concerns for station security and officer safety.

Ruling and Order (Mar. 31, 2025) (Doc. 58) at 4-5. Accordingly, those authorities

cannot crate a "clearly established" right to record a police facility, much less a

clearly established right to record sensitive, non-public areas of a police station.

The Plaintiff cites only a single case recognizing a right to videotape a police

station, i.e., Turner v. Lieutenant Driver, 848 F. 3d 678 (5th Cir. 2017). As the

District Court noted:

> Like the plaintiff here, Mr. Turner videotaped a police station from a public sidewalk and subsequently refused to provide officers with identification. Id. at 683. The Fifth Circuit stated that "a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions." Id. at 688. However, it affirmed the district court's ruling that the defendants were entitled to qualified immunity because this right was not clearly established at the relevant time.

- 9 -

Ruling and Order (Mar. 31, 2025) (Doc. 58) at 5-6. Even if <u>Turner</u> could be read to clearly establish a right to make a video recording of sensitive, non-public areas of a police station in the Fifth Circuit, which is denied, the District Court correctly held that that single case does not make any such right clearly established in this Circuit.

Further, <u>Turner</u> supports the Defendants' position that they are entitled to qualified immunity. In <u>Turner</u>, the Fifth Circuit held that, at the time of the defendants' actions in that case, there was no clearly established right to make a video recording of a police station. <u>Turner</u>, 848 F. 3d at 687. The defendants in that case were therefore entitled to qualified immunity. <u>Id.</u> The same is true in the present case as there was and is no authority clearly establishing such a right in this Circuit.

Nonetheless, the Plaintiff asserts that "the obvious unlawfulness of a defendant's conduct is sufficiently clear even without decisional law from this Court addressing similar circumstances." <u>Pl.'s Br.</u> at 27 (citation omitted). In support of this proposition, the Plaintiff invokes the "plain view doctrine." <u>Id.</u> at 28. This would make sense if all activities in plain view of public spaces were subject to being recorded by video. That is, however, not the case, particularly with respect to government facilities. For example, while oral argument in this

Court is open to the public, any recording by the public of such argument is subject to the restrictions set forth in <u>Cameras in the Courtroom – Second Circuit Guidelines</u>. <u>See</u> https://ww3.ca2.uscourts.gov/docs/CE/Cameras.pdf. While a police station is not a courtroom, the fact remains that it would not always be obvious to a reasonable police officer which areas of government facilities may be recorded at any time by the public and which may not.

The longstanding plain view doctrine does not make it "obvious" that the public may record all police activities that are visible from public spaces. For this reason, at least three Circuit Courts have held that the right to record police activities was not obvious before those Courts issued rulings on the issue. <u>See</u> <u>Turner</u>, 848 F.3d at 687 ("there was no clearly established First Amendment right to record the police at the time of Turner's activities"); <u>Kelly v. Borough of Carlisle</u>, 622 F.3d 248, 262 (3d Cir. 2010)("there was insufficient case law establishing a right to videotape police officers during a traffic stop to put a reasonably competent officer on 'fair notice' that seizing a camera or arresting an individual for videotaping police during the stop would violate the First Amendment"); <u>Szymecki v. Houck</u>, 353 Fed. Appx. 852, 853 (4th Cir. 2009) (the "asserted First Amendment right to record police activities on public property was not clearly established in this circuit at the time of the alleged conduct").

- 11 -

Finally, the Plaintiff suggests that the Defendants, and the Waterbury Police Department, do not really believe that the areas of the police station recorded by the Plaintiff are sensitive, because they have not sought to expunge all images of those areas from the internet or moved to seal the video recording taken by the Plaintiff. Pl.'s Br. at 29-31. There is no inconsistency here, because not all images or recordings capture equally sensitive activities. For example, not all images of the entry to the offices of the Youth Division capture individual victims or juveniles suspects or offenders using that entry. Permitting members of the public to record sensitive, nonpublic areas of a police station at will, however, would necessarily result in permitting such persons to record and publicize any and all such activities.

For all of these reasons, the District Court properly held that the Defendants were entitled to governmental immunity with respect to the Plaintiff's First Amendment claims.

## II. The District Court Properly Held that the Defendants were Entitled to Judgment as a Matter of Law on the Plaintiff's Fourth Amendment Claims

### A. The District Court Properly Held that the Defendants' Investigative Detention of the Plaintiff Was Lawful

#### 1. Governing Law on Grounds for Investigative Detention

- 12 -

Whether a seizure and subsequent detention of an individual's person complies with the Fourth Amendment to the United States Constitution is governed by the standard set forth in Terry v. Ohio, 392 U.S. 1 (1968). Under Terry, if a law enforcement officer can point to specific, articulable facts as the basis for a reasonable suspicion "that criminal activity may be afoot," he is justified in briefly detaining an individual to investigate. Terry, 392 U.S. at 30.

In general, the legality of such a stop is determined by a two-part test. First, courts examine "whether the officer's action was justified at its inception" and, next, they assess whether the officer's subsequent actions were "reasonably related in scope" to the circumstances that justified the stop. Id. at 19-20. The analysis under the first prong – whether the officer's action was justified at its inception – depends on the type of officer action at issue. If the initial action was of a type that invokes the protections of the Fourth Amendment, such as a seizure or a Terry stop, then the officer must be able to articulate a reasonable suspicion of criminal activity in order to justify his actions. See, United States v. Tehrani, 49 F.3d 54, 58 (2d Cir. 1995).

"The showing required to demonstrate 'reasonable suspicion' is considerably less than that which is necessary to prove probable cause." United States v. Rideau, 969 F.2d 1572, 1574 (5th Cir. 1992). Indeed, "the Fourth

- 13 -

Amendment requires only some minimal level of objective justification for the officer's actions, measured in light of the totality of the circumstances." Id. "The concept of reasonable suspicion, like probable cause, is not readily, or even usefully, reduced to a neat set of legal rules." United States v. Sokolow, 490 U.S. 1, 7 (1989) (internal quotations omitted). "Reasonable suspicion, therefore, is an intermediate standard that cannot be precisely defined, but must be determined on a case-by-case basis taking into consideration the totality of circumstances." United States v. Moore, No. 03-CR-32E, 2006 U.S. Dist. LEXIS 9184, at *11 (W.D.N.Y. Feb. 24, 2006).

### 2. The District Court Properly Held That the Defendants' Investigative Detention of the Plaintiff Was Supported by Reasonable Suspicion

As the District Court held, "[g]iven the limited information plaintiff provided and the ways his behavior differed from that of other journalists, a conscientious officer could reasonably suspect that criminal activity was afoot. The investigative detention of the plaintiff was therefore adequately supported by reasonable suspicion." Ruling and Order (Mar. 31, 2025) (Doc. 58) at 9.

The Plaintiff asserts, to the contrary, that "videotaping the police station is not a crime, and thus cannot, as a matter of law, generate reasonable suspicion." Pl.'s Br. at 51-52. The Plaintiff's reasoning turns Terry on its head.

- 14 -

In <u>Terry</u>, the Supreme Court held that observation of activity that is *not* criminal – and thus does not give rise to probable cause – may nonetheless permit an officer to perform and investigative detention. <u>See generally</u> <u>Terry</u>, 392 U.S. 1. In <u>Terry</u>, two individuals were conferring on a street corner, walking on a public sidewalk, and pausing to peer into a store window. <u>Id.</u> at 4-6. None of these activities is remotely illegal; indeed, as the Court held, "[s]tore windows . . . are made to be looked in." <u>Id.</u> at 23. A police officer nonetheless reasonably suspected the two men of "casing a job, a stick-up" and "feared 'they may have a gun.'" <u>Id.</u> at 6. Under all the circumstances in that case, the Court held that a police officer's detention of the two men, and even searching them for weapons, was constitutional. <u>See generally id.</u> In other words, <u>Terry</u> holds that activity that is not a crime can, in fact, generate reasonable suspicion. <u>Cf.</u> <u>Pl.'s Br.</u> at 51-52.

As the District Court held, the Defendants in this case had reasonable cause to conduct an investigative detention of the Plaintiff. That Court's ruling should therefore be upheld.

**B.** **<u>In the Alternative, the District Court Properly Held that the Defendants Were Entitled to Qualified Immunity Insofar as They Allegedly Violated the Plaintiff's Fourth Amendment Rights by Subjecting Him to an Investigative Detention</u>**

As the District Court aptly stated:

- 15 -

> Even assuming the detention of the plaintiff was not supported by reasonable suspicion, the defendants are entitled to summary judgment based on qualified immunity because their conduct did not violate a clearly established right. No case on point decided by either the Supreme Court or the Second Circuit has been cited or found. In the absence of such authority, a reasonable officer could think that briefly detaining the plaintiff for further investigation did not violate the Fourth Amendment.

Ruling and Order (Mar. 31, 2025) (Doc. 58) at 10. The Court continued:

> In Turner [v. Lieutenant Driver, 848 F. 3d 678 (5th Cir. 2017)], the Fifth Circuit concluded that qualified immunity applied in similar circumstances. See Turner, 848 F. 3d 678 at 691 ("Even if we assume arguendo that [the officers] violated Turner's Fourth Amendments [sic] rights by detaining him without reasonable suspicion, we cannot say that this detention was objectively unreasonable in light of clearly established law."). The Court explained that although Turner was merely filming routine activities taking place at the police station, an objectively reasonable officer could have suspected that he was casing the station for an attack, stalking an officer, or otherwise preparing for criminal activity, and thus could have found his filming sufficiently suspicious to warrant questioning and brief detention. The same is true here. In fact, this is a stronger case for qualified immunity because the plaintiff was filming sensitive areas of the police station rather than just routine activities.

Id. at 10-11.

In short, this is not a case in which "existing precedent [has] placed the constitutional question beyond debate." al-Kidd, 563 U.S. at 741. The District Court's reasoning is sound on all points and should be affirmed.

### C. The District Court Properly Held That the Defendants' Arrest of the Plaintiff Was Lawful

#### 1. Governing Law on Warrantless Arrests

- 16 -

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances. . . . A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." Wesby, 583 U.S. at 56 (citations omitted).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Walczyk v. Rio, 496 F.3d 139, 152 n.14 (2d Cir. 2007)(quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).

### 2. **The District Court Properly Held That the Defendants' Arrest of the Plaintiff Was Supported by Probable Cause**

As set forth by the District Court:

> Defendants charged the plaintiff with violating Conn. Gen. Stat. § 53a-167a, which prohibits "interfering with an officer" by "obstruct[ing], resist[ing], hinder[ing], or endanger[ing]" an officer "in the performance of [the officer's] duties." Refusing to provide identification may violate § 53a-167a because it "is likely to impede or delay the progress of the police investigation, even when that refusal is peaceable." State v. Aloi, 280 Conn. 824, 911 A. 2d 1086, 1093 (Conn. 2007). See e.g., State v. Silva, 285 Conn. 447, 939 A. 2d 581, 588 (Conn. 2008) (defendant violated § 53a-167a when she refused to provide identifying documents to police); Armstrong v. Martocchio, 3:18 CV 580 (RMS), 2021 U.S. Dist. LEXIS 82764, 2021 WL 1723243, at *10 (D. Conn. Apr. 30, 2021) (there was probable cause to arrest plaintiff for violating § 53a-167a

because she "refus[ed] to move her truck . . . , refus[ed] to identify herself when requested, and walk[ed] away from the defendant").

<u>Ruling and Order</u> (Mar. 31, 2025) (Doc. 58) at 12.  As the Court further noted:

> It is undisputed that plaintiff repeatedly refused to provide the officers with identification even after they explained their safety and security concerns.  Because such a refusal can be sufficient to violate [Conn. Gen. Stat.] § 53a-167a, a jury would have to find that the plaintiff was properly arrested for misdemeanor interference.  The state court in the underlying criminal case reached the same conclusion when it denied a motion to dismiss the criminal charge for lack of probable cause.

<u>Id.</u> at 12-13.  The District Court's reasoning is sound and should be affirmed.

The Plaintiff, however, asserts that, because the Defendants purportedly misapplied Conn. Gen. Stat. § 53a-167a, they could not have had probable cause to arrest or prosecute the Plaintiff.  <u>See</u> <u>Pl.'s Br.</u> at 61 ("Connecticut's interference statute does not apply to ID declinations during extra-legal searches, and so the appellees necessarily lacked probable cause to arrest, and commence a prosecution, for it.").  This is incorrect for several reasons.

First, a police officer's reasonable mistake of law, like a reasonable mistake of fact, does not undermine probable cause.  <u>See generally</u> <u>Heien v. North Carolina</u>, 574 U.S. 54, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014).  Thus, even if the Defendants did not have the authority to demand that the Plaintiff produce identification, which is expressly denied, the Defendants' reasonable belief that

their demand was legal would suffice to support probable cause to believe that the Plaintiff violated § 53a-167a by refusing to comply.

The Plaintiff also misstates Connecticut law by asserting that "the Connecticut Supreme Court has limited the declination-to-ID application of Conn. Gen. Stat. § 53a-167a *only* to 'legitimate' *Terry* stops, *i.e.*, those supported by reasonable articulable suspicion. *State v. Aloi*, 911 A.2d 1086, 1097 n.22 (Conn. 2007)." Pl.'s Br. at 63 (emphasis in original). The Connecticut Supreme Court imposed no such limitation on § 53a-167a. In the very footnote cited by the Plaintiff, that Court expressly reserved judgment on whether any such limitation existed:

> *Our holding today is limited to a determination that a refusal to provide identifying information to a police officer in connection with a legitimate Terry stop may be sufficient to constitute a violation of § 53a-167a.* Although a refusal to comply with certain other types of lawful police commands or orders may provide a basis for a prosecution under § 53a-167a; see, e.g., State v. Simmons, supra, 86 Conn. App. 388 (refusal to calm down and permit officer to perform patdown search, along with use of abusive language, constituted violation of § 53a-167a); for purposes of this opinion, *we need not consider any factual scenario other than the scenario presented by the lawful Terry stop in the present case.*

Aloi, 911 A.2d at 1097 n.22 (Conn. 2007)(emphasis added).

Finally, the Plaintiff cites this Court's decision in Friend v. Gasparino, 61 F.4th 77 (2d Cir. 2023), for the proposition that "refusal to obey unlawful police commands cannot generate probable cause." Pl.'s Br. at 63. The Plaintiff thus

suggests that <u>Friend</u> held that refusal to obey *any* unlawful police commands – even those that the officer issuing the command reasonably but mistakenly believes to be lawful – "cannot generate probable cause." <u>See id.</u> This Court's ruling in <u>Friend</u> did not purport to overrule the Supreme Court's decision in <u>Heien</u> in this manner. <u>See generally Friend</u>, 61 F.4th 77.

As the Plaintiff notes, <u>Friend</u> held that the plaintiff in that case "was violating no law by standing on the sidewalk and displaying his sign . . . ." <u>Pl.'s Br.</u> at 63-64 (quoting <u>Friend</u>, 61 F.4th at 87). The defendant officer's command in <u>Friend</u> was simply to cease a lawful exercise of speech protected by the First Amendment. It was not, as in the present case, a lawful request for identification pursuant to a lawful <u>Terry</u> stop. <u>Friend</u> is therefore inapposite to the present case.

The Defendants concede that it is possible to identify a fact pattern – such as that in <u>Friend</u> – in which refusal to obey a police officer's command cannot generate probable cause for arrest. But neither <u>Friend</u> nor any other authority stands for the proposition that refusal to obey unlawful police commands can never generate probable cause. <u>Cf. Pl.'s Br.</u> at 63.

In summary, the District Court correctly held that the Plaintiff's arrest was supported by probable cause, and the Defendants did not violate his Fourth Amendment right by arresting him.

- 20 -

**D.** **In the Alternative, the District Court Properly Held that the Defendants Were Entitled to Qualified Immunity Insofar as They Allegedly Violated the Plaintiff's Fourth Amendment Rights by Arresting Him**

As the District Court said with respect to the initial investigative stop, the Defendants are entitled to qualified immunity for the arrest because "[n]o case on point decided by either the Supreme Court or the Second Circuit has been cited or found." Ruling and Order (Mar. 31, 2025) (Doc. 58) at 10. As the District Court further held:

> Even if the arrest lacked probable cause, the defendants are entitled to qualified immunity because they had at least "arguable probable cause" for the arrest. Zalaski v. City of Hartford, 723 F. 3d 382, 390 (2d Cir. 2013) (quoting Escalera v. Lunn, 361 F. 3d 737, 743 (2d Cir. 2004)). An arresting officer has arguable probable cause "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Washington v. Napolitano, 29 F. 4th 93, 105 (2d Cir. 2022) (quoting Zalaski, 723 F. 3d at 390). For the reasons set forth above, it was objectively reasonable for the officers to believe that probable cause existed to arrest the plaintiff for violating § 53a-167a. The state court's finding of probable cause in the underlying criminal case after considering a counseled motion to dismiss underscores the appropriateness of qualified immunity.

Ruling and Order (Mar. 31, 2025) (Doc. 58) at 13.

As with its holding on qualified immunity for the investigative detention, the District Court's reasoning on qualified immunity is sound because the Defendants had at least "arguable probable cause" for the arrest. That Court's ruling on this point should therefore be affirmed as well.

- 21 -

### III. The District Court Properly Held That Defendant Benoit Was Entitled to Judgment as a Matter of Law on the Plaintiff's Malicious Prosecution Claim

#### A. Governing Law on Malicious Prosecution

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and establish the elements of a malicious prosecution claim under state law . . . ." <u>Fulton v. Robinson</u>, 289 F.3d 188, 195 (2d Cir. 2002).

Under Connecticut law, "[a]n action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." <u>McHale v. W.B.S. Corp.</u>, 187 Conn. 444, 447, 446 A.2d 815 (1982). The Connecticut Supreme Court has described these elements as "'stringent requirements'...." <u>Gallo v. Barile</u>, 284 Conn. 459, 475, 935 A.2d 103 (2007); <u>see also</u> <u>Giannamore v. Shevchuk</u>, 108 Conn. App. 303, 311, 947 A.2d 1012 (2008) ("Actions for malicious prosecution are not favored by the courts. Thus, a malicious prosecution action is subject to limitations that are more stringent than those surrounding other kinds of actions,

and recovery is allowed only if the requirements have been fully complied with."

(quoting 52 Am. Jur. 2d 143, Malicious Prosecution § 5 (2000)).

The third element of a claim for malicious prosecution is lack of probable

cause. McHale, 187 Conn. at 447. "The existence of probable cause is an absolute

protection against an action for malicious prosecution, and what facts, and whether

particular facts, constitute probable cause is always a question of law." (Internal

quotation marks omitted.) E.g., Falls Church Group, Ltd. v. Tyler, Cooper &

Alcorn, LLP, 281 Conn. App. 84, 94, 912 A.2d 1019 (2007).

### B. Defendant Benoit Was Entitled to Judgment as a Matter of Law on This Claim Because He Did Not Violate the Plaintiff's Fourth Amendment Rights

As set forth in Parts II.A and II.C above, the District Court properly held that

the Defendants, including Defendant Benoit, did not violate the Plaintiff's Fourth

Amendment rights in this case. The absence of a Fourth Amendment violation

precludes the Plaintiff from recovering on his malicious prosecution claim. See

Fulton v. Robinson, 289 F.3d at 195.

### C. In the Alternative, Defendant Benoit Was Entitled to Judgment as a Matter of Law on This Claim Because He Was Entitled to Qualified Immunity

In the alternative, Defendant Benoit would be entitled to qualified immunity

as to the Plaintiff's malicious prosecution claim because there was at least arguable

probable cause for the Plaintiff's arrest. See Zalaski, 723 F. 3d at 390. As set forth

- 23 -

above at Part II.D, the District Court properly found that "it was objectively reasonable for the officers to believe that probable cause existed to arrest the plaintiff for violating § 53a-167a." <u>Ruling and Order</u> (Mar. 31, 2025) (Doc. 58) at 13; <u>see also</u> <u>Washington</u>, 29 F. 4th at 105 (An arresting officer has arguable probable cause "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." (quoting <u>Zalaski</u>, 723 F. 3d at 390)).

Accordingly, the District Court properly entered judgment in favor of Defendant Benoit as to the Plaintiff's malicious prosecution claim.

## **CONCLUSION**

For the foregoing reasons, the Defendants-Appellees respectfully request that the Ruling of the District Court be affirmed in its entirety.

Respectfully submitted,

MATTHEW BENOIT AND FRANK
LAONE,
DEFENDANTS-APPELLEES

By:        /s/ Joseph A. Mengacci
        Joseph A. Mengacci, Esq.
        Daniel J. Foster, Esq.
        Office of the Corporation Counsel
        235 Grand Street, 3rd Floor
        Waterbury, CT  06702
        Tel. (203) 574-6731
        Fax No. (203) 574-8340
        corpcounsel@waterburyct.org

        Their Attorneys

## **CERTIFICATE OF COMPLIANCE UNDER RULE 32(a)(7)**

1.    This brief complies with the type-volume limitations of Fed. R. App. P. 32 (a)(7)(B) and Local Rule 32.1 (a)(4) because this brief contains 6878 words.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type-style requirements of Fed. R. App. P. 32 (a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

Dated November 5, 2025.

       /s/ Daniel J. Foster
       Daniel J. Foster, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and accurate copies of the foregoing brief were served electronically through the Court's CM / ECF system on November 5, 2025, to all parties of record.

/s/ Daniel J. Foster
Daniel J. Foster, Esq.
