# 25-1104

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

**Keith Massimino,**
*Plaintiff-Appellant*

v.

**Matthew Benoit and Frank Laone,**
*Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

### Reply Brief of Plaintiff-Appellant

Dan Barrett
Elana Bildner
Jaclyn Blickley
ACLU Foundation of Connecticut
P.O. Box #320647
Hartford, CT 06132
(860) 471-8471
e-filings@acluct.org

November 24, 2025          *Counsel for Appellant*

# Table of Contents

Table of Authorities .......................................................................ii

1.  Appellees violated Mr. Massimino's clearly established First Amendment right to record. Should the Court find otherwise, this case presents an opportunity to clarify the right. ............................... 1

   1.1   A robust consensus clearly established Mr. Massimino's right to record the exterior of the Waterbury police department from a public sidewalk as of October 2018 ....................................................... 2

   1.2   This case squarely raises the issue of whether citizens in this Circuit are protected by the First Amendment when videorecording in public. ... 5

2.  On the two seizure-related counts in Mr. Massimino's complaint, the appellees raise nothing surmounting their lack of reasonable articulable suspicion, which tainted everything after. ................................... 7

   2.1   The facts in *Terry* readily supported the suspicion of a daylight robbery, while the appellees here still cannot phrase what they suspected Mr. Massimino of doing. ........................................................... 7

   2.2   The appellees cannot retroactively cure the absence of reasonable articulable suspicion with a citation to *Heien*. ........................... 11

   2.3.   Connecticut offenses like § 53a-167a that sweep in speech cannot be violated by constitutionally protected activity such as Mr. Massimino's videorecording. ..................................................................... 14

   2.4.   The reasonable articulable suspicion requirement for seizures has been clear since *Terry*, and appellees did not satisfy it. ......................... 16

3.  Conclusion ......................................................................... 18

Federal Rules of Appellate Procedure Form 6 Certificate of Compliance with Rule 32(a) ......................................................................... 19

Certificate of Service .................................................................. 20

i

## Table of Authorities

**Cases**

*ACLU of Illinois v. Alvarez*,

679 F.3d 583 (7th Cir. 2012) ...................................................... 2

*Armstrong v. Martocchio*,

No. 3:18-CV-580 (RMS), 2021 WL 1723243 (D. Conn. Apr. 30, 2021) ... 12

*Askins v. U.S. Dep't of Homeland Sec.*,

899 F.3d 1035 (9th Cir. 2018) ...................................................... 2

*Brown v. Texas*,

443 U.S. 47 (1979) .................................................................... 13

*Cf. Connecticut Citizens Def. League, Inc. v. Thody*,

No. 23-724-CV, 2024 WL 177707 (2d Cir. Jan. 17, 2024) ......................... 2

*Cf. State v. Silva*,

939 A.2d 581 (Conn. 2008) ......................................................... 15

*El v. City of Pittsburgh*,

975 F.3d 327 (3d Cir. 2020) .......................................................... 2

*Fields v. City of Philadelphia*,

862 F.3d 353 (3d Cir. 2017) .......................................................... 2

*Figueroa v. Mazza,*

825 F.3d 89 (2d Cir. 2016) ........................................................ 16

*Friend v. Gasparino,*

61 F.4th 77 (2d Cir. 2023) ....................................................... 14

*Gerskovich v. Iocco,*

No. 15 CIV. 7280 (RMB), 2017 WL 3236445 (S.D.N.Y. July 17, 2017) ...... 6

*Glik v. Cunniffe,*

655 F.3d 78 (1st Cir. 2011).......................................................... 2

*Golino v. City of New Haven,*

950 F.2d 864 (2d Cir. 1991) ....................................................... 17

*Golodner v. Berliner,*

770 F.3d 196 (2d Cir. 2014).......................................................... 3

*Harlow v. Fitzgerald,*

457 U.S. 800 (1982) .................................................................. 17

*Heien v. North Carolina,*

574 U.S. 54 (2014)............................................................... 11, 12

*Higginbotham v. City of New York,*

105 F. Supp. 3d 369 (S.D.N.Y. 2015)........................................... 6

*Houchins v. KQED, Inc.,*

438 U.S. 1 (1978) ..................................................................... 4

*Irizarry v. Yehia*,

    38 F.4th 1282 (10th Cir. 2022) .................................................. 5

*Jenkins v. City of New York,*

    478 F.3d 76 (2d Cir. 2007) ........................................................ 16

*McCue v. City of Bangor*,

    838 F.3d 55 (1st Cir. 2016) ........................................................ 2

*Mills v. Alabama*,

    384 U.S. 214 (1966) .................................................................. 4

*Nagle v. Marron*,

    663 F.3d 100 (2d Cir. 2011) ...................................................... 3

*Papachristou v. City of Jacksonville*,

    405 U.S. 156 (1972) .................................................................. 13

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,

    460 U.S. 37 (1983) .................................................................... 1

*Reyes v. City of New York*,

    141 F.4th 55 (2d Cir. 2025) ..................................................... 5, 6

*Rhodes v. Michigan*,

    10 F.4th 665 (6th Cir. 2021) ..................................................... 2

*Sharpe v. Winterville Police Dep't*,

    59 F.4th 674 (4th Cir. 2023) ..................................................... 5

iv

*Smith v. City of Cumming*,

    212 F.3d 1332 (11th Cir. 2000) ................................................................... 2

*State v. Aloi*,

    911 A.2d 1086 (Conn. 2007) ...................................................................15

*State v. Caracoglia*,

    826 A.2d 192 (Conn. App. Ct. 2003) .........................................................15

*State v. Indrisano*,

    640 A.2d 986 (Conn. 1994) ......................................................................15

*State v. Silva*,

    939 A.2d 581 (Conn. 2008) .................................................................... 13

*State v. Williams*,

    534 A.2d 230 (Conn. 1987) ............................................................... 15, 16

*Terry v. Ohio*,

    392 U.S. 1 (1968) ......................................................................7, 8, 9, 10

*Turner v. Lieutenant Driver*,

    848 F.3d 678 (5th Cir. 2017) ............................................................. 2, 4, 5

*Ullery v. Bradley*,

    949 F.3d 1282 (10th Cir. 2020) .................................................................. 2

*United States v. Diaz*,

    854 F.3d 197 (2d Cir. 2017) .............................................................. 11, 13

*United States v. Grace,*

   461 U.S. 171 (1983) ................................................................ 1

## Statutes

Conn. Gen. Stat. § 14-213 ................................................... 13

Conn. Gen. Stat. § 14-217 ................................................... 13

Conn. Gen. Stat. § 14-36(a) ................................................. 13

Conn. Gen. Stat. § 52-571j .................................................... 5

Conn. Gen. Stat. § 53a-167a ...........................................passim

N.Y. Civ. Rights Law § 79-p(2) ............................................ 5

## Other Authorities

N.Y.C. Admin. Code § 14-189(b) ......................................... 5

1. **Appellees violated Mr. Massimino's clearly established First Amendment right to record. Should the Court find otherwise, this case presents an opportunity to clarify the right.**

In "quintessential public forums," such as the public sidewalk at issue here, "the government may . . . enforce a content-based exclusion[,]" such as a prohibition on filming the exterior a police department, only where it "is necessary to serve a compelling state interest and . . . narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983); *see United States v. Grace*, 461 U.S. 171, 180 (1983) (explaining that sidewalks "are public forums and should be treated as such for First Amendment purposes"). Avidppellees largely ignore whether the prohibition here was narrowly tailored to achieve a compelling state interest.[1] Instead, they hang their hat on the belief that, as of October 2018, the right to record the police station from a public sidewalk was not clearly established in this Circuit.[2] This position is untenable.

---

[1] The only argument the appellees assert to this effect is that certain sensitive areas of the police department require additional restrictions. Appellees' Br. 19. Perhaps the "sensitive" nature of portions of police department are an important government interest, but appellees do not explain how barring all recording on a public sidewalk is a narrowly tailored response. On this score, the appellees have conceded the arguments made by Mr. Massimino, *see* Appellant's Br. 32–34, which need not be rehashed here.

[2] Appellees' Br. 15–18.

1

### 1.1 A robust consensus clearly established Mr. Massimino's right to record the exterior of the Waterbury police department from a public sidewalk as of October 2018.

Mr. Massimino's right to record was recognized by rulings in six circuits on the night of his arrest. *See Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *Glik v. Cunniffe*, 655 F.3d 78, 83 (1st Cir. 2011); *ACLU of Illinois v. Alvarez*, 679 F.3d 583, 600 (7th Cir. 2012); *Turner v. Lieutenant Driver*, 848 F.3d 678, 690 (5th Cir. 2017); *Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017); *Askins v. U.S. Dep't of Homeland Sec.,* 899 F.3d 1035, 1044 (9th Cir. 2018). This kind of broad recognition is more than enough to clearly establish a right. *See, e.g., McCue v. City of Bangor*, 838 F.3d 55, 64 (1st Cir. 2016) (decisions from four circuits sufficient to establish consensus); *El v. City of Pittsburgh*, 975 F.3d 327, 340 (3d Cir. 2020) (four circuits sufficient); *Rhodes v. Michigan*, 10 F.4th 665, 681 (6th Cir. 2021) (five circuits sufficient); *Ullery v. Bradley*, 949 F.3d 1282, 1297 (10th Cir. 2020) (six circuits sufficient); *Cf. Connecticut Citizens Def. League, Inc. v. Thody*, No. 23-724-CV, 2024 WL 177707, at *6 (2d Cir. Jan. 17, 2024) (summary order) (one not enough).

Appellees respond to this six-circuit consensus by narrowing the right at issue. They assert that the Fifth Circuit's decision in *Turner* is the only case on point because, unlike the others, it squarely addresses the "right

to videotape a police station," as opposed to a broader right to record police activities in public.[3] This characterization of the right is too narrow. Defining a right for the purposes of qualified immunity requires the application of the Goldilocks principle—too narrow and "government actors will invariably receive qualified immunity" but too broad and "the entire second prong of qualified immunity analysis will be subsumed by the first and immunity will be available rarely, if ever." *Golodner v. Berliner*, 770 F.3d 196, 206 (2d Cir. 2014). A hypothesized right to record police *in any setting* might be too broad, whereas appellees' version of the right—to record the exterior of a specific police building—is far too narrow. The right at issue—that is, to record police activity *in public*—is just right.

This is so for at least two reasons. First, a reasonable officer can easily understand that a person has the First Amendment right to record police activity in public. *See Nagle v. Marron*, 663 F.3d 100, 114 (2d Cir. 2011). But to define the right as narrowly as appellees do here makes the task far more onerous. In appellees' view, officers should be required to parse which content (*e.g.* a building, vehicle, or barricade) is protected by the First Amendment on a case-by-case basis. Appellees' version of the right would

---

[3] Appellees' Br. 9.

either impose arbitrary liability or erase the right altogether, depending on whether the data-gatherer's camera was pointed at a police station, police car, or other plainly visible item amongst an infinite number of possibilities.

Second, a content-agnostic right to record comports with bedrock First Amendment principles. A person has the "right to gather news 'from any source by means within the law.'" *Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978). Likewise, they have a right to freely discuss government affairs. *See Mills v. Alabama,* 384 U.S. 214, 218 (1966). The right to discuss and take note of government activities has never been defined by the content of the discussion or news documented by members of the public. It makes no sense to impose content-based distinctions on the right to compile publicly available information about government actors just in the context of qualified immunity.[4]

Finally, in addition to there being no principled reason why the right to record should vary with the content recorded, it is also the case that none of the six circuits that recognized the right as of October 2018 took the

---

[4] After attempting to define away the robust consensus establishing Mr. Massimino's right to record, appellees then take a different tack. Again focusing on *Turner*, they point out that the Fifth Circuit, although it recognized a right to record, also found the right was not clearly established in 2017. The problem with the appellees' reliance on *Turner* is that, at the time that case was decided, only three Circuits recognized a right to record. By Mr. Massimino's arrest, the number of Circuits recognizing a right to record had doubled.

content-specific approach urged by appellees. Tellingly, even *Turner,* although it involved the recording of a police station, recognized, more broadly, that the "First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions." *Turner*, 848 F.3d at 688. Accordingly, appellees' narrow version of the right to record finds no support in caselaw. The only issue then is whether the six-circuit consensus existing on the night of Mr. Massimino's arrest was sufficient to clearly establish the right to record. The weight of authority compels the conclusion that it was.

**1.2   This case squarely raises the issue of whether citizens in this Circuit are protected by the First Amendment when videorecording in public.**

Since October 2018, the consensus that a right to record police activities inheres in the First Amendment has continued to grow. *See Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 862 (4th Cir. 2023); *Irizarry v. Yehia*, 38 F.4th 1282, 1293 (10th Cir. 2022). In fact, several jurisdictions in this Circuit have since codified the right. *See* Conn. Gen. Stat. § 52-571j; N.Y. Civ. Rights Law § 79-p(2); N.Y.C. Admin. Code § 14-189(b). In June of this year, the Court considered the contours of a statutory right to record in *Reyes v. City of New York*, 141 F.4th 55, 72 (2d Cir. 2025). The *Reyes* Court had no First Amendment claim before it, and certified a statutory question to the

New York Court of Appeals. But, in dicta, the panel opined that "[n]either this court nor the Supreme Court has yet recognized a First Amendment right to record law enforcement activities," without "address[ing] that question further in th[e] opinion." *Id.* at 72 n.16.

Enunciating the answer is overdue. For years, courts in this circuit have turned to caselaw in sister circuits to explain that the right to record police activity is—in their estimation—clearly established. *See, e.g., Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 380 (S.D.N.Y. 2015) (concluding that "the right to record police activity in public, at least in the case of a journalist who is otherwise unconnected to the events recorded, was in fact 'clearly established'" because the First, Ninth and Eleventh Circuits, along with a number of district courts, had all concluded that the right exists); *Gerskovich v. Iocco*, No. 15 CIV. 7280 (RMB), 2017 WL 3236445, at *9 (S.D.N.Y. July 17, 2017) ("If this Court were resolving the issue of qualified immunity, the Court would likely conclude that decisions from other Circuits clearly foreshadowed a finding here that 'the First Amendment right to film was . . . clearly established at the time of the arrest.'"). Such guesswork is unnecessary in light of textbook First Amendment principles, and the decisions recognizing a clearly established right to record police activity in

6

the First, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits. This Court should make it official.

## 2. On the two seizure-related counts in Mr. Massimino's complaint, the appellees raise nothing surmounting their lack of reasonable articulable suspicion, which tainted everything after.

As to Counts 2 and 3 of the complaint, the appellees mainly block-quote the District of Connecticut's decision. But they interpose a few non-quoted arguments to suggest that they either deserve judgment or qualified immunity on those counts. None of their contentions carries the day.

### 2.1 The facts in *Terry* readily supported the suspicion of a daylight robbery, while the appellees here still cannot phrase what they suspected Mr. Massimino of doing.

To defend their actions that night on the street, Mr. Laone and Mr. Benoit must best a difficult fact. At the moment they detained Mr. Massimino they explained that they were doing so because "videotaping a police station"[5] was "not allowed."[6] That requires the appellees to overcome the absence of warrantless detention's *sine qua non*, the belief "that criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

---

[5] JA383 at 7:08-7:09.

[6] JA383 at 8:07-8:18.

Videorecording the exterior of government buildings was and is not a crime in Connecticut, and so no reasonable articulable suspicion may arise from it. See Appellant's Br. 49-52 (enumerating decisions holding that reasonable articulable suspicion to detain cannot exist where no crime at issue). The appellees do not counter the proposition in their brief.

Instead, the appellees stake their defense on their years-later account at deposition, in which they jettisoned their on-the-scene contention that videorecording was illegal and stand on *Terry*'s treatment of innocent activity. In so doing, they ignore *Terry*'s fulsome fact pattern and do not meaningfully controvert that their *post-hoc* justifications lacked *Terry*'s requisite trinity: (1) specific and articulable facts, (2) "which, taken together with rational inferences from those facts," (3) "reasonably warrant the intrusion." *Terry,* 392 U.S. at 21.

Compared with the scant information that Mssrs. Laone and Benoit could enumerate at deposition, the facts facing the police in *Terry* look voluminous. There, a police officer named McFadden watched as two men took turns repeatedly walking past a particular store window, "paus[ing] for a moment," turning around and making another stop at the window, then conferring with one another and another man at a nearby corner before heading in the same direction together. *Id.* at 6. Having

watched them do this for ten to twelve minutes, McFadden was left with the definite conviction that the three were preparing for "a stick-up" of the store whose window they continually surveilled over his ten or twelve minutes of observation. *Id.* (internal quotation omitted); *see id.* at 28 (confirming that the pattern of behavior struck the majority as consistent with that of people "contemplating a daylight robbery").

Lacking facts to this effect, appellees cite *Terry*'s observation that "[s]tore windows . . . are made to be looked in," *id.* at 23,[7] but do not quote the punchline. What McFadden saw was a series of repeated actions which "taken together" created suspicion. *Id.* at 22. Laone and Benoit, however, had nothing to "take together" and come out with suspicion. After five or six minutes , they observed an unarmed man openly videorecording on a public sidewalk. Then, after engaging with him in a brief conversation, Mr. Massimino confirmed that he was taking footage of the police station for "a story" but politely declined to tell them what the story was about. Nothing in this encounter provided specific and articulable facts, which, taken together, warranted Mr. Massimino's detention. *See id. at* 21.

This much is made crystal clear by Benoit and Laone's contradictory, *post-hoc* justifications for the stop, which are a damning

---

[7] Appellees' Br. 15.

contrast to the clear-cut suspicion that McFadden identified in *Terry*. According to the appellees, Mr. Massimino was doing both nothing ("just on the corner filming"[8]) and everything ("I don't know if he was planning on killing somebody or trespassing"[9]). That was inchoate guessing, not the reasonable articulable suspicion necessary to seize Mr. Massimino.

Mr. Massimino's detention based on nothing more than guesswork is itself a violation of the first amendment. But it also has another effect. This initial lack of reasonable suspicion necessarily rules out probable cause for arrest and prosecution and thus resolves the arrest portion of Count 2 and the entirety of Count 3 in Mr. Massimino's favor. Because the record makes clear that at no point did appellees have reasonable suspicion, Mr. Massimino was free to terminate his conversation with them at will, or ignore their presence altogether. That being the case, there could have been no probable cause for the interference arrest and prosecution.

Even if—in a different context—an identification declination may create probable cause for a 53a-167a offense, it was a legal impossibility here, where Mr. Massimino's participation in the exchange was purely voluntary.

---

[8] JA168 at 18:24.

[9] JA175. at 25:20-25:21.

## 2.2   The appellees cannot retroactively cure the absence of reasonable articulable suspicion with a citation to *Heien*.

In a bit of a Hail Mary, Mssrs. Benoit and Laone cite *Heien v. North Carolina*, 574 U.S. 54 (2014), in passing for the proposition that a mistake of law "does not undermine probable cause."[10] But their reliance on *Hein* is misplaced, for several reasons.

First, *Heien* requires statutory ambiguity in the claimed offense in order to support a seizure. The principle does not apply unless the text at issue is "so doubtful in construction that a reasonable judge could agree with the [police] officer's view." *United States v. Diaz*, 854 F.3d 197, 204 (2d Cir. 2017) (internal quotation omitted). But the appellees make no statutory ambiguity argument about Sec. 53a-167a whatsoever.

Second, *Heien* applies only to on-the-fly "prediction[s] of law" made in the face of the "unsettled" legal question borne of the statutory ambiguity. *See Diaz*, 854 F.3d at 204 n.12. Once again, Mssrs. Benoit and Laone make no argument that either condition was true on the night they arrested Mr. Massimino.

And, even where the ambiguity exists and the police made a prediction against unsettled law—which did not occur here—a defendant

---

[10] Appellees' Br. 18.

invoking *Heien* must prove that his "prediction as to the scope of the ambiguous law at issue" was "objectively reasonable," meaning that "a reasonable judge could have accepted it at the time it was made in light of the statutory text and the available judicial interpretations of that text." *Id.*

Again, the appellees' brief is silent. That may be because any prediction that 53a-167a applied to consensual conversations would not have been an objectively reasonable one. By the night of the arrest, decades of decisions had made clear that one may not be less-than-seized but also prosecuted for behaving like a free person. And because nothing about appellees' subjective belief in the legality of their ID demand[11] has any bearing on *Heien*'s objective inquiry, appellee's unreasonable mistake of law cannot obviate their burden to establish probable cause.

The cases Messrs. Benoit and Laone cite on § 53a-167a—again, without argument—are no help to any *Heien* argument that they made an objectively reasonable prediction of unsettled law that night. *Armstrong v. Martocchio*, No. 3:18-CV-580 (RMS), 2021 WL 1723243 (D. Conn. Apr. 30, 2021), for example, post-dates appellees' arrest of Mr. Massimino—thereby not being an "available judicial interpretation[] of" § 53a-167a "at the time" the appellees made their purported prediction about the statute's meaning,

---

[11] Appellees' Br. 18-19.

*Diaz*, 854 F.3d at 204 n.12—and concerned both a seizure supported by a valid underlying traffic infraction (the plaintiff was unlawfully blocking a road with her truck), and the unique context of driving. Connecticut law imposes duties upon drivers to carry their licenses on them when driving, Conn. Gen. Stat. § 14-213, and furnish them on request during a valid traffic stop, *id.* § 14-217, because driving on public roads may be done only pursuant to a license, *id.* § 14-36(a). No such obligation exists for pedestrians like Mr. Massimino, nor could it. *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 164 (1972); *Brown v. Texas*, 443 U.S. 47, 52 (1979).[12]

Messrs. Benoit and Laone walk farther out the gangplank by invoking *State v. Aloi*, 911 A.2d 1086 (Conn. 2007), to argue that the declination-to-ID application of § 53a-167a can encompass consensual conversations.[13] In *Aloi*, the Court did not open the door for broader arrest authority for ID declinations. Rather, it reiterated that "a refusal to provide identifying information in connection with a legitimate Terry stop may be sufficient to constitute a violation of § 53a-167a." *Id.* No one here disputes

---

[12] The appellees repeat the mistake by citing *State v. Silva*, 939 A.2d 581 (Conn. 2008), which also turned on an underlying traffic infraction and the driver's refusal to furnish their license.

[13] *See* Appellees' Br. 19.

that. The appellees' problem is that they intimate some exception to *Aloi*'s maxim about lawful stops without citing any binding case law in which a court has upheld an arrest under § 53a-167a for refusing to provide identification during an *unlawful* stop.

Of course, they could not, because the Connecticut Supreme Court's limiting interpretations of § 53a-167a were themselves compelled by the Fourth Amendment and due process guardrails identified in cases like *Brown* and *Papachristou*. Further, as this Court has recently made clear in its review of the relevant caselaw, a § 53a-167a offense cannot rest upon a declination to identify oneself where the identification demand was made without a lawful reason. *Friend v. Gasparino*, 61 F.4th 77, 87 (2d Cir. 2023). The law is clear-cut and runs squarely against Benoit and Laone.

### 2.3.  Connecticut offenses like § 53a-167a that sweep in speech cannot be violated by constitutionally protected activity such as Mr. Massimino's videorecording.

Additionally, the appellees' purported probable cause for the § 53a-167a violation flounders on *mens rea*. The statute itself contains no intent requirement, but the Connecticut Supreme Court has read one in to avoid the chilling effect of an overly broad criminal offense that sweeps in protected speech. Section 53a-167a encompasses only "core criminal

14

conduct that is not constitutionally protected." *State v. Williams*, 534 A.2d 230, 239 (Conn. 1987) (internal quotation omitted). The state's appellate courts read the same limitation, for the same reasons, into Connecticut's breach of peace and disorderly conduct statutes. *See State v. Indrisano*, 640 A.2d 986, 994 (Conn. 1994) (disorderly conduct); *State v. Caracoglia*, 826 A.2d 192, 201 (Conn. App. Ct. 2003) (breach of peace).

Mr. Massimino's speech here was protected by the First Amendment. His questions to the appellees and insistence that he need not identify himself for exercising his First Amendment rights were not interposed for a quarrelsome purpose, but because Mr. Massimino genuinely—and correctly—believed that his lawful exercise of his right to record also limited the government's ability to compel him to do anything. *Cf. State v. Silva*, 939 A.2d 581, 588 (Conn. 2008) (defendant "sw[ore] at the officers, stamp[ed] her feet and t[old] the officers that she was leaving" before actually fleeing); *State v. Aloi*, 911 A.2d 1086, 1089 (Conn. 2007) (defendant who knew he was suspected of trespass and dared neighbor to call police while standing close to the disputed property, refused to identify himself based on his contention that "this isn't Russia").

Section 53a-167a "excludes situations in which a defendant merely questions a police officer's authority or protests his or her action," *See*

*Williams*, 534 A.2d at 238., and so Mr. Massimino's insistence that his First Amendment right to record meant he was doing nothing that required him to identify himself could not have been punished by the statute.

### 2.4. The reasonable articulable suspicion requirement for seizures has been clear since *Terry*, and appellees did not satisfy it.

Finally, the qualified immunity principle of arguable probable cause cannot save the appellees, either. Arguable probable cause exists if it was either "(a) objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016). Critically, arguable probable cause "should not be misunderstood to mean 'almost' probable cause." *Jenkins v. City of New York,* 478 F.3d 76 (2d Cir. 2007).

The law is clearly established that police must have reasonable articulable suspicion to detain (and, from there, generate probable cause). If police do not have reasonable articulable suspicion – if they have "almost" reasonable articulable suspicion, as the defendants appear to suggest – "the fact that it came close does not immunize the officer." *Jenkins*, 478 F.3d at 78. It is not objectively reasonable for police to detain

16

a person without reasonable articulable suspicion, and no reasonable officers could disagree on that point. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982) (holding that where, as here, "the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct").

Similarly, the appellees do not have arguable probable cause simply because the Connecticut criminal court found probable cause in one of Mr. Massimino's initial hearings. The significant procedural differences between a state court criminal proceeding and this litigation mean the state court's determination is not dispositive here. *See Golino v. City of New Haven*, 950 F.2d 864, 869 (2d Cir. 1991) (holding that finding of probable cause in Connecticut criminal hearing did not impact litigation of probable cause in subsequent Section 1983 litigation, either for purposes of collateral estoppel or qualified immunity). As in *Golino,* a finding of probable cause in a state court proceeding does not dictate the outcome here, nor tip the scales in favor of arguable probable cause or probable cause.

**3.** **Conclusion**

The appellees having raised no points entitling them to judgment on any count, this Court should reverse.

November 24, 2025

/s/ Dan Barrett_____
Dan Barrett
Elana Bildner
Jaclyn Blickley
ACLU Foundation of Connecticut
P. O. Box #320647
Hartford, CT 06132
(860) 471-8471
e-filings@acluct.org

*Counsel for Mr. Massimino*

### Federal Rules of Appellate Procedure Form 6 Certificate of Compliance with Rule 32(a)

1.      This brief complies with the type-volume limits of Fed. R. Ap. P. 32(a)(7)(B), as well as Local Rule 32.1(a)(4), because it contains 3,781 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), as well as Local Rule 32.1, because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Georgia font.

/s/ Dan Barrett
Dan Barrett

## Certificate of Service

I hereby certify that true and accurate copies of the foregoing brief were served electronically through the Court's CM/ECF System and by first-class mail, postage prepaid, in accordance with Rule 25 of the Federal Rules of Appellate Procedure on November 5, 2025 to the Clerk of the Court and all parties of record:

Joseph A. Mengacci
Daniel J. Foster
Office of the Corporation Counsel
235 Grand Street, 3rd Floor
Waterbury, CT 06702
corpcounsel@waterburyct.org

*Counsel for Defendants-Appellees*
*Matthew Benoit and Frank Laone*

/s/ Dan Barrett
Dan Barrett